Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WINSTON ROWE,<br><br>    Plaintiff,<br><br>v.<br><br>THE NEW HOME COMPANY INC., H. LAWRENCE WEBB, WAYNE J. STELMAR, DOUGLAS C. NEFF, MICHAEL J. BERCHTOLD, SAM BAKHSHANDEHPOUR, GREGORY P. LINDSTROM, CATHEY S. LOWE, and PAUL C. HEESCHEN,<br><br>    Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Winston Rowe ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.       This is an action against The New Home Company Inc. ("New Home" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated

1

thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of New Home by Newport Holdings, LLC ("Parent") and its wholly owned subsidiary, Newport Merger Sub, Inc. ("Merger Sub"), which are controlled by certain funds managed by Apollo Management IX, L.P. (the "Apollo Funds").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of New Home common stock.

7. Defendant New Home designs, constructs, and sells single-family detached and attached homes. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "NWHM."

8. Defendant H. Lawrence Webb ("Webb") is Chairman of the Board of the Company.

9. Defendant Wayne J. Stelmar ("Stelmar") is a director of the Company.

10. Defendant Douglas C. Neff ("Neff") is a director of the Company.

11. Defendant Michael J. Berchtold ("Berchtold") is a director of the Company.

12. Defendant Sam Bakhshandehpour ("Bakhshandehpour") is a director of the Company.

13. Defendant Gregory P. Lindstrom ("Lindstrom") is a director of the Company.

14. Defendant Cathey S. Lowe ("Lowe") is a director of the Company.

15. Defendant Paul C. Heeschen ("Heeschen") is a director of the Company.

16. Defendants Webb, Stelmar, Neff, Berchtold, Bakhshandehpour, Lindstrom, Lowe, and Heeschen are collectively referred to herein as the "Individual Defendants."

17. Defendants New Home and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. The Proposed Transaction**

18. On July 23, 2021, New Home and the Apollo Funds announced that they had entered into a definitive merger agreement pursuant to which the Apollo Funds agreed to acquire the Company for $9.00 per share in cash. The press release states, in pertinent part:

3

**The New Home Company Enters Into a Definitive Agreement to Be Acquired by Funds Managed by Affiliates of Apollo Global Management**

*Purchase Price of $9.00 per Share in All-Cash Transaction Valued at $173 Million in Equity Value*

*Transaction to Provide Flexibility and Capital to Accelerate Growth*

July 23, 2021 08:00 AM Eastern Daylight Time

SCOTTSDALE, Ariz. & NEW YORK--(BUSINESS WIRE)--The New Home Company (NYSE: NWHM) ("NWHM" or "the Company") and funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (NYSE: APO) (together with its consolidated subsidiaries "Apollo") today announced that they have entered into a definitive merger agreement pursuant to which the Apollo Funds have agreed to acquire the Company in an all-cash transaction for $9.00 per share. The transaction values NWHM at an enterprise value of approximately $338 million.

Under the terms of the agreement, which has been unanimously approved by the NWHM Board of Directors, the Apollo Funds will commence a tender offer to acquire all outstanding shares of NWHM for $9.00 per share in cash. The purchase price represents an 85% premium to the closing stock price on July 22, 2021 of $4.86 per share and a 51% premium to the 90-day volume-weighted average price. The holders of approximately 30% of NWHM's shares of common stock have agreed to tender their shares to the Apollo Funds pursuant to the tender offer in accordance with the terms of a support agreement.

Founded in 2009, the New Home Company is a new generation homebuilder focused on the design, construction, and sale of innovative and consumer-driven homes in key markets across California, Arizona and Colorado. The Company's range of product offerings from entry level up through luxury homes and communities have generated significant organic growth. As homebuilders continue to consolidate amid favorable supply and demand dynamics in the U.S. housing market, this transaction is designed to give the Company greater operational and financial flexibility to scale its platform while maximizing value for shareholders.

"Over the last several years, we have transformed the company into a growing and diversified builder with operations in three states," said H. Lawrence Webb, Executive Chairman of The New Home Company Board of Directors. "We have strengthened our balance sheet, streamlined our cost structure and repositioned our product offerings to cater to a deeper pool of buyers. Apollo's ability to provide flexible capital and deep knowledge of the homebuilding industry will help us to accelerate the growth of our business. Following a thorough review of the opportunities available to the Company, The New Home Company Board of

Directors unanimously determined that entering into this agreement is the best path forward to maximize value for shareholders."

"As consumer demand for new homes accelerates amid limited supply, we continue to see exciting opportunities to invest in the residential housing market," said Peter Sinensky, Partner at Apollo. "New Home's consumer-driven approach and dedicated focus on integrating unique design and architecture has separated the Company as a best-in-class homebuilder. We are excited to work with the management team to execute on the Company's growth strategy and provide more homes to consumers across the country."

"I am extremely proud of our team and the progress we've made over the last few years in transforming the company into a more profitable, better positioned homebuilder," said Leonard Miller, President & Chief Executive Officer of New Home. "We are excited to enter into this new chapter together with Apollo, who shares our strategic vision for New Home as a platform for delivering quality homes and communities with award-winning design and unparalleled customer experience. By joining forces with Apollo, we will have the financial flexibility to build on our recent successes and take the company to new heights."

The closing of the transaction is subject to customary closing conditions and the tender of shares representing at least a majority of the Company's outstanding common stock to the purchaser, an entity wholly owned by the Apollo Funds, and is expected to close in the second half of the Company's fiscal year. Following the successful completion of the tender offer, the Apollo Funds will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction will be financed with equity provided by the Apollo Funds and, if required, a committed debt financing package. Other than commitments in respect of a revolving credit facility, no incremental debt is expected to be raised in connection with the transaction.

Upon the completion of the transaction, NWHM will become a privately held company and shares of NWHM common stock will no longer be listed on any public market.

Citigroup Global Markets Inc. is acting as exclusive financial advisor to NWHM and Latham & Watkins LLP is acting as legal advisor to NWHM. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor and J.P. Morgan Securities LLC is acting as financial advisor to the Apollo Funds.

**About The New Home Company**

The New Home Company is a publicly traded company listed on the New York Stock Exchange under the symbol "NWHM." It is a new generation homebuilder

5

focused on the design, construction and sale of innovative and consumer-driven homes in major metropolitan areas within select growth markets in California, Arizona and Colorado. For more information about the Company and its new home developments, please visit the Company's website at www.NWHM.com.

**About Apollo**

Apollo is a high-growth, global alternative asset manager. We seek to provide our clients excess return at every point along the risk-reward spectrum from investment grade to private equity with a focus on three business strategies: yield, hybrid and opportunistic. Through our investment activity across our fully integrated platform, we serve the retirement income and financial return needs of our clients, and we offer innovative capital solutions to businesses. Our patient, creative, knowledgeable approach to investing aligns our clients, businesses we invest in, our employees and the communities we impact, to expand opportunity and achieve positive outcomes. As of March 31, 2021, Apollo had approximately $461 billion of assets under management. To learn more, please visit http://www.apollo.com.

19. On August 10, 2021, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

20. The Solicitation Statement, which recommends that New Home shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

21. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer; (ii) Reasons for the Recommendation of the Board; (iii) Certain Company Projections; and (iv) Opinion of the Company's Financial Advisor.

6

22. The tender offer in connection with the Proposed Transaction is set to expire at 12:00 midnight, New York time, on September 8, 2021 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Company's Financial Projections

23. The Solicitation Statement omits material information concerning the Company's financial projections.

24. The Solicitation Statement provides certain of the Company's financial projections for the years 2021 through 2025 (the "Company Projections").

25. The Solicitation Statement, however, fails to disclose the following concerning the Company Projections: (1) all line items underlying (i) Total Revenues, (ii) Gross Profit, (iii) Net Income, (iv) EBIT, and (v) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

26. When a company discloses non-GAAP financial metrics in a Solicitation Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Citi's Analyses

29. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Citi.

30. The Solicitation Statement fails to disclose the following concerning Citi's "*Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered free cash flows: (2) the terminal values; (3) the individual inputs and assumptions underlying the terminal value to inventory multiples of 0.80x to 0.90x and discount rates ranging from 11.3% to 12.9%; (4) the Company's net debt; (5) the estimated tax savings from deferred tax assets; (6) the value of deferred purchase price with respect to the acquisition of the Epic Companies; and (7) the value of unconsolidated investments as of June 30, 2021.

31. With respect to Citi's "*Selected Precedent Transactions Analysis*," the Solicitation Statement fails to disclose the closing dates and total values for each of the transactions.

32. The Solicitation Statement fails to disclose the following concerning Citi's

"*Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the discount rate of 17.75%; and (2) the basis for applying (i) illustrative price to book value multiples of 0.5x to 0.8x, and (ii) illustrative multiples of price to next-twelve-months earnings per share of 4.0x to 6.0x.

33. With respect to Citi's "*Selected Public Companies Analysis*," the Solicitation Statement fails to sufficiently explain why the Price/Book Value and Price/2022E EPS were not disclosed for one of the three selected companies, Hovnanian Enterprises, Inc. and/or why Hovnanian was included in the analysis at all. For Hovnanian, the Price/2022E EPS is listed as "N/A" while the Price/Book Value is listed as "N/M."

34. With respect to Citi's "*Implied Premia Paid*" analysis, the Solicitation Statement fails to disclose each transaction and the individual premiums paid therein.

35. The valuation methods, underlying assumptions, and key inputs used by Citi in rendering its purported fairness opinion must be fairly disclosed to New Home shareholders. The description of Citi's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, New Home shareholders are unable to fully understand Citi's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   **3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transactions**

36. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

37. On June 11, 2021, Apollo Management IX, L.P. offered to acquire the Company

9

for $9.00 per share (the "June 11 Proposal").

38.     On June 17, 2021, Company D proposed to acquire 31.5% of the Company's outstanding shares, acquire all of the Company's model homes, and commit an additional $50.0 million to potential joint venture projects with the Company (the "Company D Proposal").

39.     The Solicitation Statement fails to sufficiently disclose: (1) the "relative implied valuations of the Company D Proposal compared to the June 11 Proposal, and the challenges and uncertainties of the Company D Proposal relative to the June 11 Proposal" as discussed at the Board's June 24, 2021 meeting; and (2) the specific "details and analysis of the Company D Proposal, and a comparison of the Company D Proposal to the June 11 Proposal" as discussed at the Board's July 16, 2021 meeting.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

40.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41.     Section 14(e) of the Exchange Act states, in relevant part:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

42.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

43.     Each of the Individual Defendants, by virtue of their positions within the Company

as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

44. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

45. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

46. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

47. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

50. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance

with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

51.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

52.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

53.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

54.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

55.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

56. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

57. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

61. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

      B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

      C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

      D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

      E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 25, 2021                      Respectfully submitted,

                                                    **HALPER SADEH LLP**

                                                    By: /s/ Daniel Sadeh
                                                    Daniel Sadeh, Esq.
                                                    Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                    667 Madison Avenue, 5th Floor
                                                   New York, NY 10065
                                                   Telephone: (212) 763-0060
                                                   Facsimile: (646) 776-2600
                                                   Email: sadeh@halpersadeh.com
                                                              zhalper@halpersadeh.com

                                                  *Counsel for Plaintiff*